IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| WASTREN, INC., and | ) | |
| VAS WASTREN, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 01:06-cv-0524-VEH |
| | ) | |
| v. | ) | |
| | ) | |
| ADVANCED FEDERAL | ) | |
| SERVICES CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on Plaintiffs' (hereinafter "Wastren") Motion for Preliminary Injunction (doc. 4). Defendant (hereinafter "Advanced Federal") filed a response to the instant motion on March 17, 2006 (doc. 8). A hearing on the motion was held before the undersigned on April 5, 2006. For the reasons articulated herein, the Motion for Preliminary Injunction is hereby **GRANTED**.

## Facts

Advanced Federal is a certified participant in the Small Business Administration's 8(a) Business Development Program (hereinafter "8(a) Program"). The 8(a) Program is designed to assist small businesses owned and controlled by

1

socially and economically disadvantaged individuals. Companies certified to participate in the 8(a) Program receive assistance in obtaining certain government contracts which are administered through the Small Business Administration. Since its inception, Advanced Federal has performed its respective obligations pursuant to certain government contracts as both a prime contractor and as a subcontractor.

Plaintiff Wastren, Inc. began as a small business qualifying for assistance under the 8(a) Program. Similar to Advanced Federal, Wastren, Inc. has acted as a prime contractor and a subcontractor for government contracts. By 2003, Wastren, Inc. no longer qualified as a small business and lost all 8(a) Program benefits. Beginning in late-2005, Wastren, Inc. began a D-Reorganization; the final intended result being a complete dissolution of Wastren, Inc. with its assets being assigned to two wholly owned subsidiaries prior to Wastren, Inc.'s demise. Plaintiff VAS-Wastren, Inc. is one of the two wholly owned subsidiaries created by Wastren, Inc. during the reorganization. The subcontract at issue was assigned by Wastren, Inc. to VAS-Wastren, Inc. Wastren, Inc. has not been dissolved.

Pursuant to a government issued "Request for Proposal" designated as OJP-2004-R-002, Advanced Federal successfully competed for the award of a government contract related to certain services to be provided at the CDP located at Fort McClellan. The statement of work for the CDP encompassed all activities required

to occupy, operate, and maintain the entire facility, less the Chemical, Ordinance, Biological and Radiological Training Facility, which are covered in separate contracts. Upon being awarded the contract, Advanced Federal entered into a contract (Contract No. HSHQSL-05-C-00001) with the Department of Homeland Security for the work to be performed under the CDP contract. In turn, pursuant to a teaming agreement entered into by the parties, Advanced Federal entered into a subcontract (Subcontract No. AFSC-2005-CDP) with Wastren, Inc. to be effective on September 1, 2005. Wastren, Inc. began performing its obligations under the subcontract on that date.

By a letter dated December 18, 2005, Wastren, Inc. noticed Advanced Federal "that effective February 1, 2006, three independent companies will be established as part of a spin-off and restructuring of Wastren, Inc.," including VAS-Wastren, Inc. (Doc. 3, Ex. 3). Wastren, Inc.'s notice of its intent to effect a "D-Reorganization" also included a notice of Wastren, Inc.'s intent to assign the CDP subcontract to VAS-Wastren, Inc. pursuant to Section A-4 of the CDP subcontract. Advanced Federal asserts that it never consented to Wastren Inc.'s assignment of the CDP subcontract to VAS-Wastren, Inc.

On December 31, 2005, Wastren, Inc., VAS-Wastren, Inc., and various other parties, including Wastren, Inc. shareholders, executed an agreement of

reorganization with an effective date of January 1, 2006. (Doc. 3, Ex. 2). The agreement of reorganization provided that, effective January 1, 2006, Wastren, Inc. would transfer certain assets equaling less than 100% of its assets to VAS-Wastren, Inc., including "identified contracts, assigned personnel and site office locations." (Id.) The CDP subcontract was assigned to VAS-Wastren, Inc., a wholly owned subsidiary of Wastren, Inc., on January 1, 2006. Wastren, Inc.'s plan for reorganization included the eventual transfer of VAS-Wastren, Inc.'s stock to two shareholders of Wastren, Inc. at some time in early-2006. This transfer has not yet occurred. After this stock transfer, VAS-Wastren, Inc. will qualify as an 8(a) Program small business that would be a possible competitor with Advanced Federal for future government contracts.

By a letter dated January 23, 2006, Advanced Federal noticed Wastren, Inc. that any "new" subcontracting entity or the assignment of the CDP subcontract necessitated written approval by the contracting officer pursuant to the CDP contract between Advanced Federal and the government as well as written approval by Advanced Federal under Section A-4 of the CDP subcontract. There is a dispute among the parties as to whether such approval is required under the CDP subcontract as well as whether Wastren, Inc. sought such approval. Wastren, Inc. responded to the letter of January 23rd by a letter dated February 7, 2006, which described both the

"reorganization" of Wastren, Inc. into two entities and a "merger" between VAS, Inc. and VAS-Wastren, Inc.[1] (Doc. 3, Ex. 7).

By letter dated February 17, 2006, Advanced Federal provided Wastren, Inc. notice of its intent to terminate the CDP subcontract pursuant to Section A-6 effective at 11:59 P.M. on Friday, March 17, 2006. (Doc. 3, Ex. 8).[2]

On Thursday, March 16, 2006, Wastren filed a complaint asserting a cause of action for declaratory judgment against Advanced Federal and requesting injunctive relief. Contemporaneous with the filing of the complaint, Wastren filed a motion for a temporary restraining order and for preliminary injunction. The temporary restraining order was issued by the Honorable Judge William M. Acker, Jr. following a hearing held on Friday, March 17, 2006.[3]

---

[1]VAS, Inc. and VAS-Wastren, Inc. will have the same shareholders following the successful completion of the reorganization of Wastren, Inc.; however, the undisputed testimony before the court at the hearing on the instant motion is that the two companies will not be merged together to form one entity. The drafter of the letter testified that he used the word "merger" not in its legal sense, but in the sense that the experience of VAS, Inc. would be merged with the experience of VAS-Wastren, Inc. because they will have the same shareholders.

[2]Section A-6 of the CDP subcontract provides, in part:

**Merger, Consolidation, Etc.** In the event ... or (b) of any merger, consolidation or other combination of Contractor with any other person or entity, Advanced Federal shall have the right, in its sole and absolute discretion, to terminate this Subcontract and to replace Contractor, directly or indirectly, to perform Contractor's duties hereunder and under the government prime contract.

[3]The TRO was set to expire on Monday, March 26, 2006, at 9:30 A.M. at which time the court was scheduled to hold a hearing on the motion for a preliminary injunction. Pursuant to the

   At the hearing on the motion for a temporary restraining order, in their papers presented to the court, and during the hearing on the motion for a preliminary injunction, the parties have raised the issue of Advanced Federal's right to terminate the subcontract for convenience.

## Standard of Review

A preliminary injunction is an "extraordinary and drastic remedy" that should be granted only if the moving party has clearly established: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not be adverse to public interest. *Cunningham v. Adams*, 808 F.2d 815 (11th Cir. 1987). *See also U.S. v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Kaisha v. Swiss Watch International, Inc.*, 188 F. Supp. 2d 1350, 1353 (S.D. Fla. 2002). The moving party carries the burden of persuasion as to each of these four elements. *U.S. v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983), *reh'g denied*, 724 F.2d 978 (11th Cir. 1984). *See also*

---

agreement by the parties and by the order of this court, the TRO remained in effect and the hearing was rescheduled for April 5, 2006, at 10:00 A.M.

*Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003); *McDonald's Corp.*, 147 F.3d at 1306.   When analyzing the first two elements, the review "require[s] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1241 (11th Cir. 2005); *quoting Siegel v. LePore,* 234 F.3d 1163, 1178 (11th Cir.2000) (en banc).

Granting a motion for a preliminary injunction is "the exception rather than the rule." *Lambert*, 695 F.2d at 539 (quoting *Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)).[4]  A district court's order granting or denying a motion for preliminary injunction is reviewed on appeal for abuse of discretion. *McDonald's Corp.*, 147 F.3d at 1306.  *See also Buckeye v. Baker Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (citing *U.S. v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983)).

"In order for a preliminary injunction to issue, the nonmoving party must have notice and an opportunity to present its opposition to the injunction." *Four Seasons Hotels and Resorts*, 320 F.3d at 1210.  Sufficiency of notice "is a matter left within

---

[4]In *Bonner v. City of Prichard*, 661 F.2d 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions rendered by the former Fifth Circuit prior to October 1, 1981.

7

the discretion of the trial court." *United States v. Alabama*, 791 F.2d 1450, 1458 (11th Cir. 1986). The notice requirement "implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 434, 94 S.Ct. 1113, 1122 (1974). The underlying principal of providing the nonmoving party with notice and an adequate opportunity to respond is carefully honored by the courts. *Four Seasons Hotels and Resorts*, 320 F.3d at 1210 (internal citations and marks omitted). The decision to determine the appropriate amount of notice is left to the district court's discretion; in addition, short notice may be adequate under certain circumstances. *Id.* at 1212.

An evidentiary hearing is not always required prior to the issuance of a preliminary injunction; however, "where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held." *McDonald's Corp.*, 147 F.3d at 1312 (citing *All Care Nursing v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535 (11th Cir. 1989). When conflicting facts place "in serious dispute issues central to a party's claims and much depends upon the accurate presentation of numerous facts, the trial court errs in not holding an evidentiary hearing to resolve these hotly contested issues." *Four Seasons Hotels and Resorts*, 320 F.3d at 1211 (quoting *All Care Nursing*, 887 F.2d

at 1539) (internal marks omitted).

## Discussion

**I.      Likelihood of Success on the Merits**

"The requesting party's failure to demonstrate a 'substantial likelihood of success on the merits' may defeat the party's claim, regardless of its ability to establish any of the other elements." *Haitian Refugee Center, Inc. v. Christopher*, 43 F.3d 1431, 1432 (11th Cir. 1995) (citing *Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir.1994)). "[T]he word 'substantial' does not add to the quantum of proof required to show a likelihood of success on the merits." *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir. 1983). The 11th Circuit has held that the "substantial likelihood" test merely requires that the moving party "show the probability that plaintiff will succeed on the merits." *Id.* (internal marks omitted). Where the other three elements weigh strongly in favor of granting a preliminary injunction, the moving party need only show a minimum threshold of likelihood of success on the merits in order to justify temporary injunctive relief. *Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980).

The court finds that Wastren has met its burden as to substantial, meaning probable, success on the merits. The court finds that Section A-4 of the subcontract

is ambiguous, and Wastren has presented credible testimony that Section A-4 was prepared by Advanced Federal and intended to permit the actions Wastren has taken, including the assignment of the subcontract to VAS-Wastren, Inc.  To the extent this testimony was controverted by Advanced Federal, the court assigns more weight and credibility to the testimony offered by Wastren.  The court further holds that Section A-6 of the subcontract is inapplicable to this case insofar as evidence has been brought before the court at this time.  Accordingly, based on the evidence before the court at this time, Wastren has demonstrated a likelihood of success on the merits for the purpose of satisfying the first element in *Cunningham* necessary to secure a preliminary injunction.

**II.    Irreparable Harm to the Plaintiff**

"A showing of irreparable harm is the *sine qua non* of injunctive relief." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1241 (11th Cir. 2005); *citing Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir.1990) (citation and internal quotation omitted).  "[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).  *See Snook v. Trust Co. of Georgia Bank of Savannah, N.A.,* 909 F.2d 480,

486 (11th Cir.1990) (affirming denial of preliminary injunction even though plaintiff established likelihood of prevailing because plaintiff failed to meet burden of proving irreparable injury); *City of Jacksonville,* 896 F.2d at 1285 (reversing preliminary injunction based solely on plaintiff's failure to show irreparable injury); *Flowers Indus. v. FTC,* 849 F.2d 551, 552 (11th Cir.1988) (same); *United States v. Lambert,* 695 F.2d 536, 540 (11th Cir.1983) (affirming denial of preliminary injunction and stating that a plaintiff's "success in establishing a likelihood it will prevail on the merits does not obviate the necessity to show irreparable harm"). "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Siegel*, 243 F.3d at 1176-77 (internal marks omitted).

Advanced Federal argues that, due to Wastren's delay from February 17, 2006, until March 16, 2006, Wastren has not evidenced to the court that it will suffer irreparable harm giving rise to the issuance of a preliminary injunction in this case.

A plaintiff's dilatory prosecution of its rights can detract from the notion of irreparable harm; however, no such situation exists in the present case. *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2nd Cir. 1985) ("Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction"). The parties were engaged in attempts to reach a settlement to avoid the

11

need for litigation in the days and weeks prior to Wastren's filing of the instant motion. Even absent these negotiations, the court does not find it unreasonable, where the parties have been in communication with one another during the intervening time period, that Wastren would file the motion at bar one month after Wastren, Inc. became aware of Advanced Federal's intention to terminate the subcontract.[5] Advanced Federal's arguments related to delay in filing this motion do not weigh against Wastren's credibility as to irreparable harm.

At the hearing on the instant motion, Advanced Federal directed the court's attention to *Cunningham v. Adams*, 808 F.2d 815 (11th Cir. 1987), for the proposition that termination of a government subcontract does not equate to irreparable injury. *Cunningham* is distinguishable from the present case both in the fact that a likelihood of success on the merits was not shown in *Cunningham* and due to a lack of testimony in *Cunningham* that experience in running an airport concession would be an important or a central requirement to secure a bid for airport concessions in the future.

---

[5] District courts have held that a three month delay between a plaintiff's <u>last communication</u> with a defendant and a motion for a preliminary injunction constituted undue delay which negated irreparable harm. *See Kaisha v. Swiss Watch International, Inc.*, 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002); *Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976, 981 (S.D.N.Y. 1989). Wastren and Advanced Federal communicated on numerous occasions up to mere hours prior to the filing of the motion for a preliminary injunction; therefore, these cases are inapplicable to the case at bar.

In the instant case, the court has found a substantial likelihood of success on the merits. In addition, there has been testimony in this case, which the court finds credible, that the lack of successful experience in performing a government contract will be a serious impediment, indeed potentially fatal, to any efforts by VAS-Wastren to successfully bid other government contracts. Based on such testimony, the court concludes that any termination for default under the contract would be tantamount to irreparable injury and would doom VAS-Wastren in its efforts to obtain future government contracts. In addition, the court concludes that a termination for convenience would similarly injure Plaintiffs.[6]

The testimony offered by both Wastren and Advanced Federal clearly establishes that the world of government contracts is singularly unique in the realm of contractual relationships. There is no method whereby damages could be computed with reasonable certainty should this court allow for termination of the subcontract pursuant to Section A-4, Section A-6, or under a termination for convenience; therefore, there is no adequate remedy at law that could make Wastren whole should Advanced Federal be permitted to terminate the subcontract prior to the

---

[6]The court specifically finds that, based upon the lack of any evidence to the contrary, under the plain language of clause 1.82 52.249-6 Termination (Cost-Reimbursement) (MAY 2004), the right of termination contained therein (referred to by the parties as "termination for convenience") lies in the government only, and not in Advanced Federal.

conclusion of this litigation.

### III.  Harm to the Defendant weighed against Harm to the Plaintiffs

Mr. Bonilla, the President and C.E.O. of Advanced Federal, stated that there is no allegation that Wastren has failed to perform under the subcontract or that Wastren's performance to date has been unsatisfactory.  Accordingly, there is no threat of injury to Advanced Federal that is measurable or significant as compared to the irreparable injury Wastren would certainly sustain absent an injunction.  Under the terms of the injunction, Wastren is bound to continue performance under the terms of the subcontract.

### IV.  Harm to the Public

An injunction in this case will not be adverse to the public interest considering that the ordered relief will ensure that the status quo remains constant throughout the course of this action.

### Conclusion

This court concludes that Wastren has successfully met the four elements articulated in *Cunningham v. Adams*, 808 F.2d 815 (11th Cir. 1987), necessary to establish a need for entry of a preliminary injunction.  A separate Order will be entered consistent with this memorandum opinion.

**DONE** this 11th day of April, 2006.

                                               **VIRGINIA EMERSON HOPKINS**
                                               United States District Judge